# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **B.G., R.G., and W.E.**

**No. 24-11** (Fayette County CC-10-2022-JA-74, CC-10-2022-JA-75, and CC-10-2022-JA-78)

## MEMORANDUM DECISION

Petitioner Mother A.G. ("the mother") and Petitioner Father E.E.[1] ("the father") jointly appeal the Circuit Court of Fayette County's December 8, 2023, order terminating their parental rights to B.G., R.G., and W.E., arguing that the circuit court erred by denying their motion for post-dispositional improvement periods and terminating their parental rights.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In July 2022, the DHS filed a petition alleging that the mother was arrested during the night for driving under the influence and taken into police custody. The following morning, the mother informed law enforcement that she had children home alone. Upon investigation, officers found three children under the age of three alone in the home, which was in deplorable and unsafe conditions. There was no lock on the door, exposed wiring, and multiple pill bottles containing morphine. Food was scarce and it appeared that the children attempted to make toast in the oven. The children were wearing only diapers, with no clothing found in the home. When the DHS spoke with the father, he first stated that he left three months prior because "he could no longer deal with [the mother's] drinking"; however, he later denied that statement and claimed that he moved to Ohio for employment. Based on the foregoing, the petition alleged that the mother had an alcohol use disorder that impaired her ability to care for the children and exposed the children to unsafe

---

[1] The petitioner A.G. appears by counsel Nancy S. Fraley, and the petitioner E.E. appears by counsel Jack M. Thompson. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Andrew T. Waight. Counsel Elizabeth K. Campbell appears as the children's guardian ad litem ("guardian").

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

and unsuitable living conditions. The petition further alleged that the father failed to protect the children from the mother's alcohol use and the unsafe and unsuitable living conditions.

The petitioners stipulated to certain allegations in the petition at an adjudicatory hearing held in August 2022. The mother admitted that the home was in deplorable condition and the father admitted to failing to protect the children from the deplorable conditions. For these reasons, the circuit court adjudicated the parents and found the children to be abused and neglected. The petitioners thereafter filed motions for post-adjudicatory improvement periods, which were granted based on the recommendation of the multidisciplinary team and the agreement of the parties in October 2022. The improvement period terms included, in relevant part, that the petitioners refrain from possessing or consuming alcohol or illicit substances, submit to drug and alcohol screening, complete psychological evaluations and follow evaluator recommendations, participate in services, maintain employment, obtain suitable housing, and exercise visitation with the children at the discretion of the DHS and guardian. The mother's psychological evaluation revealed a "poor" prognosis without treatment and the father's psychological evaluation was inconclusive due to his inconsistent responses, irritability, and lack of cooperation. The evaluators recommended the petitioners participate in therapy. Despite the petitioners' failure to begin therapy at the time, the court extended their improvement periods at a hearing held in March 2023. Thereafter, at a review hearing held in June 2023, the DHS moved the court to set the matter for disposition. The DHS advised the court that the mother had been testing positive for THC and the father tested positive for amphetamines earlier that month, thus, visits were not occurring consistently. During one supervised visit, a social worker reported that she found a "blunt" in a sardine can under their couch. Moreover, the children had been in foster care for fifteen months at this time. Accordingly, the court scheduled the matter for disposition. The petitioners thereafter filed a joint motion for post-dispositional improvement periods.

The circuit court held a series of dispositional hearings, culminating in a final hearing in November 2023. The court heard testimony from a service provider who conducted parenting classes and supervised visitation. She described visits as "chaotic" and indicated that she would have safety concerns if she were not present to intervene. As a result, visits were never unsupervised or longer than four hours. The service provider was advised by daycare workers and the foster parents that the children's behavior worsened after visits with the petitioners. The petitioners' implementation of parenting education was "minimal" and their participation in parenting classes was inconsistent due to their alleged issues with work schedules. Furthermore, the home smelled of marijuana "almost every [visit] up until about a month or so ago" and although the petitioners were testing positive for THC at that time, the service provider testified that they blamed the neighbors for the marijuana smell. A Child Protective Services worker testified that, while the petitioners had obtained appropriate housing and employment, there was "not enough time to correct issues." Emphasizing the importance of therapy in this case, the worker stated that the petitioners delayed starting until June 2023 and, thereafter, missed several sessions. The worker also raised issues with drug screening, as the mother had a recent positive screen for alcohol and the father submitted his drug screen results by sending screenshots from his cell phone. The mother testified, admitting to being a consistent marijuana user since she was nineteen but denied any marijuana use throughout the case, opining that there could have been "trace amounts" in the "gummies from the gas station." When asked about the "blunt" found in the home, the mother responded that "I moved everything out of my father's house to our house . . . it could have been

moved." She further indicated that when she recently screened positive for alcohol, she "maybe had like one glass of wine." The father likewise testified that he had not used marijuana since the inception of the case and speculated that his positive results for other illicit substances were false positives from his prescription medication. The court did not find the petitioners' testimony credible and, based on the evidence, determined that termination was appropriate. Noting that the children had been in DHS custody for more than fifteen months, the court stated that it must make a decision; therefore, finding that no compelling circumstances existed to grant further periods of improvement and that the children deserved permanency, the court denied the petitioners' motion for post-dispositional improvement periods. The court further found no reasonable likelihood that the petitioners would be able to substantially correct the conditions of abuse or neglect in the near future and that it was necessary for the welfare of the children to terminate their parental rights. It is from the final dispositional order that the petitioners appeal.[3]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioners argue that the circuit court erred by denying their joint motion for post-dispositional improvement periods. Pursuant to West Virginia Code § 49-4-610(3)(D), when parents have already been granted an improvement period, a circuit court may only grant a post-dispositional improvement period if it is "demonstrate[d] that since the initial improvement period, [they have] experienced a substantial change in circumstances," and "due to that change in circumstances, [they are] likely to fully participate in the improvement period." Here, the petitioners insist that they demonstrated a substantial change in circumstances and that they would be likely to fully participate in a post-dispositional improvement period. Upon our review, we disagree and discern no error in the circuit court's denial of their motion. Although the petitioners made some improvements by obtaining new housing and employment, the record shows that they were in violation of other improvement period terms, such as refraining from the use of illicit substances and alcohol. Although the petitioners denied their use of illicit substances, the court made a credibility determination in that regard that we refuse to disturb on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). The petitioners argue that their participation in therapy demonstrated a substantial change in circumstances; however, the case had been pending for nearly a year before they began therapy and, thereafter, the petitioners missed several sessions. Moreover, the children had been in foster care for more than fifteen of the most recent twenty-two months, implicating the time limitation for improvement periods contained in Chapter 49. *See* W. Va. Code § 49-4-610(9) (providing that "no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests"). The court did not find compelling circumstances existed here; but rather, that it was appropriate to deny the petitioners' motion and move toward permanency for the children. *See State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 260, 470 S.E.2d 205, 214 (1996) ("Although it is sometimes a difficult task, the trial court must accept the fact that the statutory limits on improvement periods . . . dictate that there comes a time

---

[3] The permanency plan for the children is adoption in their current foster placement.

for decision, because a child deserves resolution and permanency in his or her life."). It was within the circuit court's discretion to deny the petitioners an additional improvement period, and we see no abuse of discretion under these circumstances. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) (explaining that the circuit court has discretion to deny an improvement period when no improvement is likely).

The petitioners further assign error to the circuit court's decision to terminate their parental rights. However, the petitioners ignore that the court is permitted to do so upon findings that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future and that termination is necessary for the children's welfare. *See* W. Va. Code § 49-4-604(c)(6). The court properly made such findings based on the weight of the evidence, considering testimony regarding the petitioners' failure to properly adhere to improvement period terms, which resulted in limited visits. The petitioners argue that because the court allowed the DHS and guardian to limit visitation, they were not afforded a meaningful opportunity to implement the skills they learned through parenting classes in order to correct the issues in this case. However, our review of the record reveals that the petitioners were granted significant time and opportunity for improvement, yet service providers continued to express concern for the children's safety, so visits could not be increased or unsupervised. Because the health, welfare, and safety of the children is the paramount concern, we see no error by the court in this regard. *See In re Jeffrey R.L.*, 190 W. Va. 24, 32, 435 S.E.2d 162, 170 (1993) ("we emphasize that the health, safety, and welfare of [the child] must be our primary concern in analyzing the facts and issues before us"). Therefore, the petitioners are not entitled to relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 8, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: November 6, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

4